STEVE W. BERMAN
GEORGE W. SAMPSON
TYLER WEAVER
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
george@hbsslaw.com
tyler@hbsslaw.com

JENNIFER FOUNTAIN CONNOLLY
HAGENS BERMAN SOBOL SHAPIRO LLP
1629 K St. NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 355-6435
Facsimile: (202) 355-6455
jenniferc@hbsslaw.com

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| IN RE LIVE CONCERT ANTITRUST LITIGATION | Case No.: 2:06-MDL-01745 SVW (VBKx) |
| | **JOINT MEMORANDUM IN SUPPORT OF THE PARTIES' SETTLEMENT PROCESS** |
| This document relates to:<br><br>ALL ACTIONS | Hearing: None<br>Time: None<br>Courtroom: 6<br>Judge: Hon. Stephen V. Wilson<br>Trial Date: None |

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.      INTRODUCTION ...................................................................................1

II.     BACKGROUND ....................................................................................1

III.    BECAUSE DECERTIFICATION IS IN THE BEST INTERESTS OF
        THE CERTIFIED CLASSES, THE COURT MAY PROPERLY
        DECERTIFY THE CLASS TO PERMIT THE NAMED PARTIES TO
        SETTLE INDIVIDUAL CLAIMS .......................................................4

IV.     DEFENDANTS BELIEVE THAT DECERTIFICATION IS
        APPROPRIATE IRRESPECTIVE OF ANY SETTLEMENT OF
        INDIVIDUAL CLAIMS BETWEEN THE PARTIES .........................7

        A.     The Court May Decertify a Class at Any Time if Developments
               in the Litigation Reflect that Certification is Not Proper ...................8

        B.     Plaintiffs Cannot Prove a Relevant Product Market, Antitrust
               Injury, or Causation Through Class-Wide Evidence ..........................8

V.      CONCLUSION ....................................................................................12

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Abbe v. v. City of San Diego, Cal.*, No. 3:05-cv-01629-DMS-RBB,
ECF No. 833 (S.D. Cal. May 26, 2009), *aff'd in part, dismissed
in part*, 444 Fed. Appx. 189 (9th Cir. 2011) ................................................ 10

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L.
Ed. 2d 689 (1997) ........................................................................................ 9

*Applied Med. Resources Corp. v. U.S. Surgical Corp.*, 352 F. Supp. 2d
1119 (C.D. Cal. 2005) ................................................................................ 10

*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S. Ct. 2454, 57 L. Ed.
2d 351 (1978) .............................................................................................. 8

*Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401 (9th Cir. 1989) ................... 5

*Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) (the
"*Dukes* case") ................................................................................ 2, 3, 9

*Forsyth v. Humana, Inc.*, 114 F.3d 1467 (9th Cir. 1997), *aff'd*, 525 U.S.
299, 119 S. Ct. 710, 142 L. Ed. 2d 753 (1999) .......................................... 10

*Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 102 S. Ct. 2364, 72 L. Ed. 2d
740 (1982) .................................................................................................... 8

*Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219 (2d Cir. 2006) ................... 9

*Holloway v. Full Spectrum Lending*, No. CV 06-5975 DOC, 2008 WL
4184648 (C.D. Cal. Sept. 4, 2008) .......................................................... 4, 5

*In re Aftermarket Automotive Lighting Prods. Antitrust Litig.*, 276
F.R.D. 364 (C.D. Cal. 2011) ..................................................................... 11

*In re Live Concert Antitrust Litig.*, 247 F.R.D. 98 (C.D. Cal. 2007) ..................... 11

*In re Methionine Antitrust Litig.*, 204 F.R.D. 161 (N.D. Cal. 2001) ...................... 12

*In re Methionine Antitrust Litig.*, No. 00-1311, 2003 WL 22048232
(N.D. Cal. Aug. 26, 2003) ........................................................................... 5

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............... 5

*Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481 (7th Cir. 2012) .................... 12

*Kamilche Co. v. United States*, 53 F.3d 1059 (9th Cir. 1995) ............................... 10

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978)................. 12

*Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985) ................................................ 11

*Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476 (C.D. Cal. 2008),
    *aff'd*, 639 F.3d 942 (9th Cir. 2011) ................................................................. 8

*Monreal v. Potter*, 367 F.3d 1224 (10th Cir. 2004) ............................................... 11

*Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011) ........................................... 7

*O'Brien v. Sky Chefs, Inc.*, 670 F.2d 864 (9th Cir. 1982), *overruled on
    other grounds by Atonio v. Wards Cove Packing Co.*, 810 F.2d
    1477 (9th Cir. 1987) ........................................................................................ 6

*Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145 (9th Cir.
    2003).................................................................................................................. 9

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................. 8

*Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356 (N.D. Cal. 2010) ............................ 12

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. __, 131 S. Ct. 2541, 180 L.
    Ed. 2d 374 (2011) ................................................................................. 3, 8, 9, 11

## **STATUTES**

Section 2 of the Sherman Act, 15 U.S.C. § 2 ........................................................... 1

## **RULES**

Fed. R. Civ. P. 23 .......................................................................................... 1, 5, 8, 11

Fed. R. Civ. P. 23(a) ........................................................................................... 3, 7, 8

Fed. R. Civ. P. 23(b)(3) .......................................................................................... 3, 7

Fed. R. Civ. P. 23(c)(1)(C) ........................................................................................ 8

Fed. R. Civ. P. 23(e) .................................................................................................. 5

Fed. R. Civ. P. 41(a)(1)(A)(ii) .................................................................................. 4

Fed. R. Evid. 702 ....................................................................................................... 2

## **MISCELLANEOUS**

1B Moore's Federal Practice ¶ 0.443[2] ................................................................. 10

## I.    INTRODUCTION

Pursuant to the Court's order dated May 29, 2012 (Dkt. 618), the Parties to this multidistrict litigation ("MDL") jointly submit this memorandum to address the [Proposed] Order Granting Joint Stipulation Regarding Decertification of Classes, filed on May 22, 2012 (Dkt. 616).  In its May 29, 2012 order, the Court asked whether the proposed settlement process and the jointly proposed order regarding decertification would "contravene the parties' – or the Court's – obligations with respect to any putative class members."  They will not.  The settlement binds Defendants and the named class representatives only.  The rights and claims of absent putative class members are not implicated.  Indeed, absent class members will benefit from decertification, as decertification and settlement by the named class representatives is more preferable for absent class members than continuation of the litigation, fighting a certification battle, and potentially facing entry of summary judgment against the remaining classes.  The requirements set forth in Fed. R. Civ. P. 23 for the settlement of class claims do not apply here because there are no class claims being settled.

## II.    BACKGROUND

Plaintiffs in this MDL, by and through their counsel of record, filed 22 regional putative class actions against Defendants in the Litigation alleging substantively identical claims of (1) Monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2; (2) Attempted Monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2; and (3) Unjust Enrichment.  Among other things, each of the 22 actions alleged the identical product market (the market for "tickets to live rock concerts"), injury and causation.  The actions ultimately were consolidated and assigned to this Court by the Judicial Panel on Multidistrict Litigation.

On November 1, 2006, the Court issued an order staying regional (but not national, corporate-level) discovery in every action except five "test" actions representing five geographic regions:  Los Angeles, Denver, Boston, New York, and

1  Chicago.  Dkt. 36, 37.  On October 22, 2007, the Court issued an order certifying the

2  classes in these five actions.  Dkt. 160.  On November 16, 2009, the Court denied

3  Plaintiffs' motion for approval of plan for class notice for the five certified classes.

4  Dkt. 215.  No notice of class certification has ever been disseminated.

5      Following a stay of the case while the Ninth Circuit decided and reviewed its

6  decision in *Dukes v. Wal-Mart Stores, Inc*., 603 F.3d 571 (9th Cir. 2010) (the

7  "*Dukes* case"), the Court reactivated the case in October 2010.  On December 10,

8  2010, the Court entered a stipulated order limiting discovery to the Denver and Los

9  Angeles actions (but again permitting national, corporate-level discovery), and

10  staying the Chicago, New York, and Boston actions until the Denver and Los

11  Angeles actions were tried or otherwise resolved.  Dkt. 260.

12      On March 23, 2012, the Court issued an order granting in part Defendants'

13  motion to exclude certain testimony of Plaintiffs' sole expert, Dr. Owen Phillips,

14  and granting summary judgment in favor of Defendants in the Denver and Los

15  Angeles actions.  Dkt. 605.  Specifically, the Court held that Dr. Phillips' testimony

16  "fail[ed] to satisfy Rule 702's requirements in both: (1) defining the relevant product

17  market; and (2) populating this market for purposes of his analysis."  *Id.* at 58.  The

18  Court further held that Dr. Phillips' testimony failed to satisfy the requirements of

19  Rule 702 with respect to the (1) fact and amount of damages, and (2) causation of

20  the Plaintiffs' alleged injury, and it excluded all testimony on those subjects except

21  with respect to alleged ticket fees.  *Id.* at 9-29.  In light of the inadmissibility of Dr.

22  Phillips' testimony, the Court held that Plaintiffs' evidence was insufficient as a

23  matter of law to raise a genuine issue of fact as to the relevant product market for

24  "tickets to live rock concerts" alleged by Plaintiffs.  *Id.* at 61-62.

25      The Court recognized in its March 23, 2012 order that, when it certified the

26  five "test" actions in October 22, 2007, it believed itself to be precluded by the

27  Ninth Circuit's controlling decision in the *Dukes* case from resolving factual

28  disputes and weighing conflicting expert testimony at the class certification stage.

But the *Dukes* case was subsequently superseded and later reversed by the Supreme
Court in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. __, 131 S. Ct. 2541, 180 L. Ed.
2d 374 (2011), in which the Supreme Court held that an evaluation of expert
testimony at the class certification stage is proper.  Dkt. 605 at 5.

Following the March 23, 2012 order, Defendants expressed their intention to
move for decertification of the five certified classes and for denial of certification of
the remaining seventeen classes.  In light of the Court's rulings regarding the legal
insufficiency of the Plaintiffs' "rock" concert market and the inadmissibility of Dr.
Phillips' testimony on relevant market, injury and causation, Defendants argued that
Plaintiffs were necessarily unable to establish the commonality and predominance
required for certification under Fed. R. Civ. P. 23(a) and 23(b)(3), or the
ascertainability of purported class members.  Defendants also expressed their
intention to seek summary judgment in all 20 remaining cases on the basis of the
rulings in the Denver and Los Angeles cases.

After considering the Court's March 23, 2012 order excluding the testimony
of Dr. Phillips with respect to the alleged relevant product market and causal
antitrust injury, as well as the Court's view of the Supreme Court's holding in *Wal-
Mart Stores, Inc. v. Dukes*, 564 U.S. __, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011),
Plaintiffs and their counsel concluded that the alleged classes in the MDL would not
likely remain certified or be certified and that summary judgment would be entered
against the classes that are certified.  Accordingly, Plaintiffs determined that it was
in the best interests of both the named plaintiffs and the absent class members to
terminate this litigation with prejudice to the named plaintiffs but without prejudice
to the absent class members.

The Parties thereafter negotiated a settlement to terminate the litigation and
resolve the outstanding claims of the individual class members, as well as any
claims for recovery of costs and fees.  The Parties executed the final global
settlement on May 22, 2012.  The settlement provides that the Parties will jointly

1  stipulate to decertification, and once the Court has entered the order of

2  decertification, the Parties will file a joint stipulated dismissal with prejudice of all

3  of the actions in this MDL pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).

4  **III.  BECAUSE DECERTIFICATION IS IN THE BEST INTERESTS OF THE CERTIFIED CLASSES, THE COURT MAY PROPERLY DECERTIFY THE CLASS TO PERMIT THE NAMED PARTIES TO SETTLE INDIVIDUAL CLAIMS**

5

6

7          In its May 29, 2012 Order, the Court asked the Parties to submit a brief

8  explaining why an order decertifying the five classes currently certified "would not

9  contravene the parties'—or the Court's—obligations with respect to any putative

10  class members." Dkt. 618.  Because decertification is in the best interests of the

11  certified classes, and because the Parties' settlement is not binding on any of the

12  absent class members, the Court may properly decertify the classes to permit the

13  named Parties to settle individual claims.  *Holloway v. Full Spectrum Lending*, No.

14  CV 06-5975 DOC (RNBx), 2008 WL 4184648 (C.D. Cal. Sept. 4, 2008) is directly

15  on point.  In *Holloway*, after the court had certified the putative class action, but

16  prior to notice being disseminated to the class, the class representative moved to

17  decertify the class to permit an individual settlement of her claims.  *Id.*  The basis

18  for the motion for decertification was that after the class had been certified, a federal

19  court of appeal issued a decision that significantly affected the legal merits of the

20  plaintiffs' claims.  *Id.*  The court thus granted the motion for decertification to allow

21  an individual settlement of the plaintiff's claims, recognizing that it was "unlikely

22  that Plaintiff will prevail on the merits" and as such, "[she] will probably not be able

23  to fairly and adequately protect the interests of the class."  *Id.* at *4.

24          Here, as in *Holloway*, decertification of the classes to permit individual

25  settlements is proper because, as this Court recognized in its May 29, 2012 Order, it

26  is unlikely that, absent a lengthy and completely successful appeal, Plaintiffs will be

27  able to prevail on the merits of their claims in light of the Court's March 23, 2012

28  summary judgment order.  Moreover, no absent class members will be prejudiced

1   because the Parties' settlement does not bind absent class members, and no class

2   notice has ever been disseminated.  *See In re Methionine Antitrust Litig.*, No. 00-

3   1311, 2003 WL 22048232, at *5 (N.D. Cal. Aug. 26, 2003) (because "[plaintiff]

4   never sent notice to prospective class members, the Court need not send notice of

5   the dissolution to the prospective class").

6          The requirements and procedures of Rule 23 do not apply to a settlement that

7   resolves only the individual claims of the named Parties following decertification.

8   *See* Fed. R. Civ. P. 23(e).  While at one time, courts interpreted Rule 23 to require

9   court approval of a settlement of the individual claims of a plaintiff seeking to

10  represent a putative class, *see, e.g.*, *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d

11  1401, 1409 (9th Cir. 1989), the rule was amended in 2003 such that "[t]he new rule

12  requires approval *only* if the claims, issues, or defenses of a *certified* class are

13  resolved by a settlement, voluntary dismissal, or compromise."  Fed. R. Civ. P. 23,

14  Advisory Committee Notes to 2003 Amendment (emphasis added).

15         While the Court here was concerned in its May 29, 2012 order that "[s]ettling

16  directly with a class representative, to the exclusion of other class members,

17  generally is improper," the Parties have been unable to identify any authority that

18  prohibits settling directly with a class representative where decertification of the

19  class is appropriate because of developments in the litigation.  To the contrary,

20  *Holloway*, as discussed above, stands for the opposite rule.  Moreover, the case cited

21  by the Court in its order of May 29, 2012, *In re Tableware Antitrust Litig.*, 484 F.

22  Supp. 2d 1078, 1079-80 (N.D. Cal. 2007), was stating the rule applicable to *class-*

23  *wide settlements*:  that a class settlement may be approved only where it "does not

24  improperly grant preferential treatment to class representatives."  This case is

25  distinguishable from *Tableware* since there is no class settlement, and the named

26  plaintiffs are not settling to the "exclusion" of absent class members because

27  nothing in the settlement affects the rights of absent class members.

28

Indeed, the Parties' proposed procedure for resolving this litigation is in the best interests of the absent class members because they can seek to claim that it protects them from the adverse judgment against the Plaintiffs in the Los Angeles and Denver actions and protects them from the possibility of judgment against the Plaintiffs in the remaining three certified regions. The Ninth Circuit has recognized that where the class representatives have failed to produce evidence sufficient to withstand summary judgment, decertification of the class is beneficial to absent class members and preferable to entry of summary judgment against the entire class because it protects against the possibility that the class representative did not adequately represent the class. *O'Brien v. Sky Chefs, Inc.*, 670 F.2d 864, 869 (9th Cir. 1982) (affirming decertification where plaintiffs failed to present evidence supporting their claims after two and one-half years of discovery), *overruled on other grounds by Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477 (9th Cir. 1987).

As set forth in the attached Declaration of Jennifer Fountain Connolly, in entering into this settlement, Class Counsel fully considered the best interests of the certified classes as well as the interests of putative class members.[1] First, Class Counsel concluded that, because the Court's March 23, 2012 Order would be reviewed under an abuse of discretion standard, obtaining a complete reversal of that decision would be both difficult and time-consuming. *Id.* ¶¶ 4, 5. Second, they determined that entering into a class-wide settlement would not be feasible because the parties could not certify a settlement class without expert testimony and because, even if a settlement class could be certified, any recovery to Class members would be minimal and largely absorbed by the costs of notice. *Id.* ¶ 7. Third, they determined that under governing Ninth Circuit authority they could not develop a *cy*

_____

[1] Defendants lack sufficient knowledge regarding the statements in the Connolly Declaration and take no position on them here, but acknowledge that many options were explored in attempting to resolve these cases.

*pres* settlement that would directly benefit class members.  *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1040 (9th Cir. 2011) (holding *cy pres* distribution must (1) address the objectives of the statutes under which underlying action is brought, (2) target the plaintiff class, or (3) provide reasonable certainty that any member will be benefited).  *Id.* ¶ 8.  Fourth, after the Court's April 26, 2012 Order, Plaintiffs were facing the real possibility of having the classes decertified, or having the Court enter judgment against all five of the certified classes and thereafter having a substantial bill of costs entered.  *Id.* ¶ 9.  Given these circumstances, Class Counsel concluded that it was in the best interests of the Classes to seek decertification as part of a settlement between Defendants and the class representatives.  *Id.* ¶¶ 10, 11.

The Court may therefore properly decertify the classes to permit the named Parties to settle their individual claims and resolve this litigation.

## IV.   DEFENDANTS BELIEVE THAT DECERTIFICATION IS APPROPRIATE IRRESPECTIVE OF ANY SETTLEMENT OF INDIVIDUAL CLAIMS BETWEEN THE PARTIES [2]

The factual and legal determinations made by the Court in its March 23, 2012 order granting summary judgment in the Los Angeles and Denver actions make it highly unlikely that Plaintiffs will be able to prove a single relevant product market or common antitrust injury or causation, precluding them from establishing commonality under Fed. R. Civ. P. 23(a) or predominance under Fed. R. Civ. P. 23(b)(3) with respect to any of the MDL actions.  The Court's March 23, 2012 decision therefore effectively requires decertification of the classes (and denial of certification to the remaining putative classes).

---

[2] Plaintiffs do not join this section of the Brief and explicitly reserve all arguments regarding the appropriateness of decertification should the Parties' settlement not be consummated, but Plaintiffs do agree that based on the Court's March 23, 2012 Order, (1) they faced the possibility of decertification and (2) the risk of decertification was one of the factors considered in entering into the settlement.

1
2

**A.    The Court May Decertify a Class at Any Time if Developments in the Litigation Reflect that Certification is Not Proper**

3    All class certification decisions are provisional in nature.  *See* Fed. R. Civ. P.

4   23(c)(1)(C) ("An order that grants or denies class certification may be altered or

5   amended before final judgment.").  Thus, "[e]ven after a certification order is

6   entered, the judge remains free to modify it in the light of subsequent developments

7   in the litigation." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364,

8   2372, 72 L. Ed. 2d 740 (1982).  Indeed, "[a] district court may decertify a class at

9   any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see*

10  *also Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 479 (C.D. Cal. 2008) ("The

11  district court's order to grant class certification is subject to later modification,

12  including class decertification."), *aff'd*, 639 F.3d 942 (9th Cir. 2011); *Coopers &*

13  *Lybrand v. Livesay*, 437 U.S. 463, 469 n.11, 98 S. Ct. 2454, 2458, 57 L. Ed. 2d 351

14  (1978) (a court's class certification order is "inherently tentative").  The Court is

15  thus free to, and should, decertify the classes since, as discussed below, they do not

16  meet the requirements of Rule 23 in light of the Court's March 23, 2012 Order.

17
18

**B.    Plaintiffs Cannot Prove a Relevant Product Market, Antitrust Injury, or Causation Through Class-Wide Evidence**

19    Given the Court's March 23, 2012 order rejecting the testimony of Plaintiffs'

20  expert on key issues concerning market definition, antitrust injury, and causation,

21  Defendants contend that Plaintiffs cannot demonstrate that certification is proper,

22  and Plaintiffs acknowledge that they are not likely to persuade the Court otherwise.

23  Plaintiffs have the burden to demonstrate the propriety of class certification.  *Wal-*

24  *Mart*, 131 S. Ct. at 2551.  "[C]ertification is proper only if 'the trial court is

25  satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been

26  satisfied.'"  *Id.* (quoting *Falcon*, 457 U.S. at 161)  "Frequently that 'rigorous

27  analysis' will entail some overlap with the merits of the Plaintiffs' underlying claim.

28  That cannot be helped." *Id.*  As this Court has previously recognized, this

1   certification standard permits the Court to undertake "a meaningful analysis" of "the

2   underlying facts of the case [and] the representations of the parties' respective

3   experts."  Dkt. 605 at 5; *see also Wal-Mart*, 131 S. Ct. at 2553-54 ("The District

4   Court concluded that *Daubert* did not apply to expert testimony at the certification

5   stage of class-action proceedings. We doubt that is so[.]").[3]

6          Here, to meet the requirements of certification under *Wal-Mart*, Plaintiffs

7   would have to demonstrate that, for each region, there is a single product market of

8   all "rock" concerts linking together Plaintiffs' claims, as opposed to numerous

9   distinct markets that would preclude class treatment.  *See Wal-Mart*, 131 S. Ct. at

10  2553 (requiring plaintiffs to prove the existence of a general policy of

11  discrimination).  "[A] plaintiff claiming monopolization is obligated to establish the

12  relevant market because the power to control prices or exclude competition only

13  makes sense with reference to a particular market."  *Heerwagen v. Clear Channel

14  Commc'ns*, 435 F.3d 219, 229 (2d Cir. 2006).  Thus, certification would be

15  improper if Plaintiffs' cannot prove the existence of their alleged market for live

16  "rock" concerts.  *See Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145,

---

18      [3]To establish commonality under *Wal-Mart*, Plaintiffs must prove the existence
19  not just of common questions, but of common questions that have the potential to
    generate common answers.  131 S. Ct. at 2550-51 ("What matters to class
20  certification . . . is not the raising of common 'questions' – even in droves –but,
    rather the capacity of a classwide proceeding to generate common answers apt to
21  drive the resolution of the litigation.") (citation omitted).  Class treatment is
22  appropriate only where the "claims . . . depend upon a common contention" that is
    "capable of classwide resolution – which means that determination of its truth or
23  falsity will resolve an issue that is central to the validity of each one of the claims in
    one stroke." *Id.* at 2551.  To satisfy the predominance requirement – a requirement
24  that the Supreme Court has called a "vital prescription" that "tests whether proposed
    classes are sufficiently cohesive to warrant adjudication by representation" –
25  common questions must predominate over any individual issues.  *Amchem Prods.,
26  Inc. v. Windsor*, 521 U.S. 591, 623-24, 117 S. Ct. 2231, 2249-50, 138 L. Ed. 2d 689
    (1997).  The predominance requirement is far "more demanding" than mere
27  commonality.  *Wal-Mart*, 131 S. Ct. at 2565-66.

1163 n.22 (9th Cir. 2003); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997), *aff'd*, 525 U.S. 299, 119 S. Ct. 710, 142 L. Ed. 2d 753 (1999).  Without the single "rock" concert product market, there is no "glue" holding together the millions of divergent claims of putative class members, and therefore, no basis for class certification.

But Plaintiffs have demonstrated that they cannot prove their alleged "rock" concert market.  The Court's March 23, 2012 order held that Plaintiffs could not prove the existence of the alleged "rock" concert market as a matter of law. Principles of collateral estoppel and *stare decisis* prevent the remaining plaintiffs – all of whom pled the identical "rock" concert market – from re-litigating this issue. *See, e.g.*, *Abbe v. v. City of San Diego, Cal.*, No. 3:05-cv-01629-DMS-RBB, ECF No. 833, at *10-12 (S.D. Cal. May 26, 2009), *aff'd in part, dismissed in part*, 444 Fed. Appx. 189, 190 (9th Cir. 2011) (collateral estoppel precluded relitigation of issues decided by test cases in a consolidated action), *cert. denied*, 132 S. Ct. 1062, 181 L. Ed. 2d 741 (2012).  Under the doctrine of collateral estoppel (issue preclusion), "once an issue is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case." *Applied Med. Resources Corp. v. U.S. Surgical Corp.*, 352 F. Supp. 2d 1119, 1125 (C.D. Cal. 2005) (quoting *Kamilche Co. v. United States*, 53 F.3d 1059, 1063 (9th Cir. 1995)).  "Any contention that is necessarily inconsistent with a prior adjudication of a material and litigated issue . . . is subsumed in that issue and precluded by the effect of the prior judgment as collateral estoppel."  *Kamilche*, 53 F.3d at 1063 (quoting 1B Moore's Federal Practice ¶ 0.443[2]).  In other words, Plaintiffs cannot simply find another expert and try again to prove the existence of the "rock" concert market, as such re-litigation of a prior-adjudicated issue is prohibited by collateral estoppel.

Even without application of collateral estoppel, the cases are unlikely to be certified because the remaining Plaintiffs lack admissible evidence supporting their

1  alleged "rock" concert product market, and thus cannot "affirmatively demonstrate"

2  this prerequisite to Rule 23 certification.  *Wal-Mart*, 131 S. Ct. at 2551.  Defendants

3  would vigorously oppose any effort by Plaintiffs to seek additional discovery to try

4  to prove the claimed product market.  Courts routinely deny class certification

5  discovery to plaintiffs, as the Southern District of New York (affirmed by the

6  Second Circuit) did in the Heerwagen case which is the predecessor to the instant

7  MDL actions.  *See, e.g.*, *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)

8  (trial court has discretion to deny class certification discovery); *Monreal v. Potter*,

9  367 F.3d 1224, 1238 (10th Cir. 2004) (same).  And here, Plaintiffs have already had

10 *years* of discovery, millions of pages of documents, and dozens of depositions (fact

11 and expert) to try to prove the existence of the alleged "rock" concert market, but

12 have come up empty.  Plaintiffs cannot credibly claim entitlement to anything more,

13 particularly where Plaintiffs' exclusive reliance on national data (produced years

14 ago) refutes any argument that additional regional discovery could add anything to

15 the analysis.

16        Likewise, Plaintiffs have an uphill battle to try to demonstrate that antitrust

17 injury and causation can be proven through class-wide evidence.  Recognizing that

18 examination of facts specific to particular concerts would destroy the commonality

19 and predominance required for class treatment, Plaintiffs' sole expert Dr. Phillips

20 sought to rely on statistical "models" to show class-wide injury and damages, but

21 that approach was rejected by the Court as unreliable and unsupported.  *See* Dkt.

22 605 at 9-28.  The Court's exclusion of Dr. Phillips' testimony leaves Plaintiffs with

23 little or no evidence to demonstrate class-wide injury and damages, providing

24 additional, independent reasons for denying certification.  *See Wal-Mart*, 131 S. Ct.

25 at 2554-56 (requiring proof that "all the individual . . . decisions" were unlawful); *In*

26 *re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 132-33, 136 (C.D. Cal. 2007); *see*

27 *also In re Aftermarket Automotive Lighting Prods. Antitrust Litig.*, 276 F.R.D. 364,

28 368-69 (C.D. Cal. 2011) ("A class may not be certified unless the question whether

1   the class paid artificially inflated prices as a result of Defendants' alleged conspiracy

2   to fix prices is amenable to common proof."); *In re Methionine Antitrust Litig.*, 204

3   F.R.D. 161, 166 (N.D. Cal. 2001) (denying class certification where plaintiffs lacked

4   colorable method of determining injury in fact on a class-wide basis).

5         Defendants further contend that the Court's March 23, 2012 order makes

6   clear that Plaintiffs have no objective criteria to identify class members.  Dkt. 605 at

7   50-58 (ruling that Plaintiffs failed to provide any objective, reliable methodology for

8   identifying "rock" concerts).  This failure of ascertainability provides yet another

9   reason that the classes cannot be properly certified.  *See Sullivan v. Kelly Servs.,*

10  *Inc.*, 268 F.R.D. 356, 362 (N.D. Cal. 2010) ("An adequate class definition specifies

11  'a distinct group of plaintiffs whose members [can] be identified with

12  particularity.'") (quoting *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512

13  (9th Cir. 1978)); *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 493 (7th Cir.

14  2012) ("a class must be sufficiently definite that its members are ascertainable").

15        Plaintiffs acknowledge that in light of the Court's March 23, 2012 order,

16  Plaintiffs are not likely to prevail in further litigation of the class certification issues.

17

18  **V.     CONCLUSION**

19        For the foregoing reasons, the Parties' jointly proposed order decertifying the

20  classes and denying certification for the putative classes should be granted to

21  facilitate a final settlement and resolution of this MDL.

22

23

24

25

26

27

28

1  Respectfully submitted,

2  Dated:  June 6, 2012                 HAGENS BERMAN SOBOL SHAPIRO LLP

3                                       By: /s/ Jennifer F. Connolly
                                             Jennifer Fountain Connolly
4
5                                       1629 K St. NW, Suite 300
                                        Washington, D.C.  20006
                                        Tel.:  (202) 355-6435
6                                       Fax:  (202) 355-6455
                                        E-mail:  JenniferC@hbsslaw.com
7
8                                       Elaine T. Byszewski
                                        Lee M. Gordon
                                        HAGENS BERMA SOBOL SHAPIRO LLP
9                                       700 South Flower Street, Suite 2940
                                        Los Angeles, CA  90017
10                                      Tel.: (213) 330-7150
                                        E-mail:  Lee@hbsslaw.com
11                                              Elaine@hbsslaw.com

12                                      Steve W. Berman
                                        George Sampson
13                                      Tyler Weaver
                                        HAGENS BERMAN SOBOL SHAPIRO LLP
14                                      1918 Eighth Ave., Suite 3300
                                        Seattle, WA  98101
15                                      Tel.:  (206) 623-7292
                                        Email:  steve@hbsslaw.com
16                                              george@hbsslaw.com
                                                tyler@hbsslaw.com
17
18                                      Kenneth A. Wexler
                                        Mark R. Miller
                                        WEXLER WALLACE LLP
19                                      55 W. Monroe, Suite 3300
                                        Chicago, IL  60603
20                                      Tel.:  (312) 346-2222
                                        E-mail: kaw@wexlerwallace.com
21                                              mrm@wexlerwallace.com

22                                      Lee Squitieri
                                        Olga A. Pettigrew
23                                      SQUITIERI & FEARON LLP
                                        32 East 57th Street, 12th Floor
24                                      New York, NY  10022
                                        Tel.: (212) 421-6492
25                                      E-mail:  lee@sfclasslaw.com

26                                      ***Co-Lead Counsel and Executive Committee
                                        Members***

27

28

1

2

3

4

Jeffrey Kodroff
SPECTOR, ROSEMAN, KODROFF &
WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Tel.: (215) 496 0300
E-mail: jkodroff@srkw-law.com

5

6

7

8

Nicholas Chimicles
Kimberly Donaldson
CHIMICLES & TIKELLIS LLP
361 W. Lancaster Avenue
Haverford, PA  19401
Tel.: (610) 642-8500
E-mail:  nick@chimicles.com
            kimdonaldson@chimicles.com

9

10

11

12

Lance Harke
HARKE & CLASBY
9699 NE Second Avenue
Miami, FL 33138
Tel.: (305) 536-8220
E-mail:  lharke@harkeclasby.com

13

14

15

16

Hollis Salzman
LABATON SUCHAROW
140 Broadway
New York, NY 10005
Tel.:(212) 907-0700
E-mail: hsalzman@labaton.com

17

***Executive Committee Members***

18

19

20

21

22

23

24

25

26

27

28

-14-

1

Dated:  June 6, 2012

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  /s/ Jonathan M. Jacobson
Jonathan M. Jacobson
1301 Avenue of the Americas
40th Floor
New York, NY  10019

Colleen Bal
Wilson Sonsini Goodrich & Rosati PC
650 Page Mill Road
Palo Alto, CA 94304

MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO, P.C
Harvey I. Saferstein
2029 Century Park East, Suite 1370
Los Angeles, California 90067

**_Attorneys for Defendants_**